May it please the Court, my name is Stephanie Adraktis. I'm appearing today on behalf of the petitioner Delano Tolden. I'd like to reserve two minutes if I may. Tolden's sentence of 25 years to life based on his failure to register as a sex offender is grossly disproportionate in violation of the Eighth Amendment. Tolden is mentally retarded, he has intellectual function that is in the lowest 1% of the population, and the State Court unreasonably concluded that there was conflicting evidence on that point when there was not. Dr. Durning's testimony that Tolden obtained an IQ score of 67 during intelligence testing where he was putting forth his best effort was not rebutted by evidence in the record. Dr. Durning also testified that Tolden could not, given his deficits, adequately read or comprehend the complicated sex registration requirements. That was also, that testimony was unrebutted. All of the evidence also suggested that Tolden had registered in the past under circumstances when he must have been prompted to do that by authorities when he was released from custody. Given these facts, the State Court unreasonably applied the gross disproportionality principles to this case. Because the analysis requires first that the State Court take into account the circumstances of Tolden's offense and weigh those against the harshness of the penalty that was applied. And the circumstances of this case include those facts concerning Tolden's mental state, his mental capabilities, and his adaptive functioning or his life skills abilities. The State Court opinion, which is at the excerpts of record 51, 54, 57 is where that analysis is conducted, did not take into account Tolden's deficits when considering his offense and weighing it against the penalty. Sotomayor. Counsel, we're here on habeas, and so we are guided by a Federal law defined as Supreme Court authority. So what Supreme Court case mandates that mental retardation be considered in determining the punishment? For capital punishment, there is a case. Understood, Your Honor. But what is there a case that addresses mental retardation in the non-capital setting? There is not a specific United States Supreme Court case that deals with a term of years sentence and the subject of mental retardation specifically. But the Graham case that was cited by Respondent, there is language in Chief Justice Roberts' concurring opinion where he talks about the specific culpability of the individual offender as being an appropriate point of analysis. Does that help you? Does a concurring opinion in a Supreme Court decision help you in habeas, in a habeas case? Because we have to, we're guided by, you know, Supreme Court authority that sets the, that sets a precedent. And if there is no Supreme Court precedent, our case authority tells us that no habeas relief can be granted. Your Honor, I would point to, well, the language in Justice Roberts' opinion, which is at 130 Supreme Court 2037, is referring to prior United States Supreme Court jurisprudence like Solemn and Harmelin that consider gross disproportionality of a term of year sentence. So I do believe that his opinion in that case does inform the analysis here, as well Ramirez v. Castro, as well as Gonzalez v. Duncan, has applied gross disproportionality principles to new sets of facts. And that's what Panetti, the case cited in Petitioner's reply brief, tells us about applying the AEDPA, because it does allow a court in Federal habeas to apply general principles like gross disproportionality to new sets of facts, including those here involving Mr. Tolden's particular mental state. I do believe the Atkins opinion, although it is a case involving categorical analysis, does inform our analysis here because it talks about the particular disabilities of mentally retarded people in light of the reasons for punishment. And those include deterrence, retribution. A person who functions at the level of a child, as Mr. Tolden does, is not the kind of person who can be deterred in the way that the criminal law is supposed to function, because, as the Court explained in Atkins, people like him simply do not have the ability to function, learn, and to adequately comply with something as complex as this regulatory statute by himself. And I would point to the fact that every witness who testified about Mr. Tolden described him as someone who was eager to please, a hard worker. If he had been prompted in this case to register when he needed to, there just doesn't seem to be any question that he would have. He was working. He had found a place to live. He was in compliance with the law. He was living the kind of life that he should have lived on parole and that I'm sure his parole officer would have approved of if he had known of his whereabouts. So this is not a case where he was undermining the purpose of the registration statute, because the purpose, it would seem, is community safety. And there was no threat to community safety here because he was not functioning in a nonlaw-abiding way. Counsel, there was conflicting evidence in the record regarding the Petitioner's mental capability. There wasn't all evidence that he was mentally retarded. There was evidence to the contrary as well, right? Your Honor, in our brief, we point out the many reasons that that's not the case. There was no conflicting evidence. And in fact, the district judge did amend the order in that respect. There was a Petition for Rehearing filed when the – or for reconsideration filed as to the district court opinion. The district court amended its order to delete the statement about conflicting evidence about retardation. There is no conflicting evidence. Mr. Tolden has consistently tested in the CDCR, in the prison system, as well as outside of it. He was evaluated twice by Dr. Durning, once in 1999 and once in preparation for the second trial. Both times he tested in this mentally retarded range. What did the state court say about that? The state court pointed to, as it's pointed out in our briefs, to evidence that simply doesn't contradict Dr. Durning's testimony. For example, the testimony of a woman who supervised him at the Greyhound bus station saying that Mr. Tolden is able to move luggage around and tag it is not evidence that he is not mentally retarded, especially when weighed against the testimony of an expert psychologist who conducted hours of psychometric tests on Mr. Durning and whose testimony was not rebutted by an expert for the government. The court But on habeas, we have to accept the findings of the state court unless it's an unreasonable determination of the facts. Understood, Your Honor. And for the reasons stated in the brief, we do believe it was unreasonable when a physician, a doctor who is a psychologist, has tested somebody's mental capability repeatedly and is relying on those tests to say to the court, this man is mentally retarded. It is unreasonable to say that a layperson like the supervisor at the Greyhound bus station asserting that he's a good worker is enough to find that he's not retarded, particularly when Dr. Durning was also pointing to evidence of testing that was done where Mr. Tolden was found to be mentally incompetent in previous proceedings and in those instances experts from the CDCR had also tested him. It's simply unreasonable, and I would point to that for the court to have found that there was conflicting evidence about his retardation. The reading of the entire record makes it very clear that he is. Judge Carney had a question. Yes. With all the evidence of his mental disabilities, was that presented to the jury in the state court? It was presented to the jury in the context of his defense, which was that he did not have actual knowledge of the 14-day registration requirement, and that is part and parcel of our Instructional Error Claim, particularly Claim 3, where we point out that the trial court erroneously failed to instruct the jury that Mr. Tolden had to have actual knowledge that he had to register 14 days after moving to a new city in order to violate the statute. That's an element of the crime. The jury was not instructed as to that, and this was his defense. The jury did hear this evidence, but because they weren't instructed that he needed to know that particular fact, we submit that his conviction was also unconstitutional on that ground. When you say that particular fact, the 14 days or just the duty to register, if you understand the distinction? I do, Your Honor, and that is a crucial distinction, because the jury was instructed that he had a general – he had to know that he had a general duty to register, but that's not good enough under California law. It's very clear that he has to know that he has to – that he has a duty to register within 14 days of moving to a new city. And I would submit the California registration statute, it boggles the mind in its complexity. 290 to 290.023, I read them all, they specify various registration requirements depending on whether you're a transient, if you move somewhere, on your birthday. I mean, these are complicated statutes. And to convict Mr. Tolden of that particular violation, which is what was alleged, that he moved from Modesto to Sunnyvale, that he had to register within 14 days of that move, was what the jury needed to find, that he had actual knowledge of that. And so it wholly undermined his defense, which was based on Dr. Durning's testimony that he has substantial mental limitations. And it wholly undermined his defense that the jury didn't get instructed that they needed to make that specific finding as to him. Thank you, counsel. Clear from the government? Good morning. Jill Thayer on behalf of the Respondent. I'll just start with the cruel and unusual punishment issue. And, yes, in this case, in the entire case and every single issue, the question is not whether the state court was wrong, but whether its application of clearly established United States Supreme Court authority was objectively unreasonable. So not whether they were wrong, not whether this court would disagree with them, but whether it was objectively unreasonable for it to reach the holdings it did on each of the issues in this case. And in doing so, we apply the general principles of the Eighth Amendment, right? Well, we apply United States Supreme Court authority, as the United States Supreme Court has analyzed. And it's changed over the years, generally gotten better for the defendants over the years, but not to the point where the case that really matters here is Lockyer v. Andrad. That's the case that was clearly established at the time the state court rendered its ruling. Graham v. Florida was decided after this case was final. And in Lockyer v. Andrad, they said it's a gross disproportionality principle in connection with terms of your sentences. They've never said – Turning to Adkins for a minute. Obviously, Adkins was a capital case. What's the principal distinction, do you think, between capital and non-capital cases in terms of the law? Capital is final. And, you know, they also make a big distinction between life with parole and life without parole. Solemn v. Helm was life without parole. And notably, Graham v. Florida was also life without parole with a juvenile offender. In this case, we have an allegedly mentally retarded offender. And in Graham v. Florida, which was decided after this case, the United States Supreme Court said, no, you can't give him life without parole. You need to give him some kind of a chance to get out. We don't say a state must allow them to get out, but they have to have some meaningful opportunity. And in this case, he was sentenced to 25 years with the possibility of parole. And I want to just speak a little bit about the evidence of mental retardation. I'd like to notice – I finally read last night all of Dr. Durning's testimony, but he did not testify that Petitioner was mentally retarded. He refused to give that diagnosis. At ER 209, he said, I'm not testifying he's mentally retarded. He said, I'm not going to give that diagnosis. I don't have enough evidence to say that. So we can't even assume his own, you know, Petitioner's own... Expert. Expert. Thank you. Expert is testifying that he was mentally retarded. There was... Assuming for the sake of argument that the – there was – it was uncontested that the Petitioner was mentally challenged to the point of retardation and that he couldn't understand the registration requirements, just hypothetically. Do you think it would be constitutional to sentence him to prison for failing to comply with a law he couldn't understand? I think in this case, where the jury was... I'm not talking about this case. Well, in any case, in any case, a jury is going to be instructed under California instructions that if a mental infirmity prevents the person from complying, his noncompliance is not willful. So this Court isn't deciding facts here. No, no, I'm not suggesting that we are. A jury decided that fact. I'm trying to take this, peel back the onion one bit at a time. I mean, the State concedes, I assume, that it would be unconstitutional to incarcerate somebody who is incapable of understanding a registration requirement. If someone's incapable of committing a crime, then perhaps, yeah, perhaps that would be unconstitutional. If they didn't commit the crime and they're incapable of committing it, then sending them to prison for the rest of their lives is... Or 25 years. Or 25 years. That theoretically could be the case. But we're not talking theory here. We're talking United States Supreme Court authority. And the United States Supreme Court has never held that. So we're not in that area. I mean, we're looking, and we're not just looking at United States Supreme Court authority. We're saying, were they utterly unreasonable? Not do we disagree with them, but it was objectively unreasonable. And I'm not sure you could even say, well, it's hard to talk about the theories, but would it be objectively unreasonable for a State court to hold otherwise? I'm not sure. Do you think it would be objectively reasonable to send someone who's incapable of understanding instructions to prison for failing to understand the instructions and comply with them? I mean, I don't want to quibble with you, but it seems like you're taking a fairly extreme position. It would be very unfair. I'll say, yes, it would. I mean, I personally, if you want to ask for my personal opinion, I don't, I would not agree with that, but that's not this case. Would you mind addressing the instructional error issue? Okay. Again, on the instructional issue, and I find it very telling that Petitioner never even mentions Middleton v. McNeil, which is the 2004 United States Supreme Court case that looks at an admittedly erroneous instruction and says, no, if you look at the instructions as a whole, the jury would have understood the correct meaning, and they were not unfair, if you look at the instructions as a whole. That's what the United States, that's what the State court did in this case, is they looked at the instructions and they looked at the prosecutor's argument, because the prosecutor said, I need to prove actual knowledge. Several instructions said, actual knowledge is required. The mental state is actual knowledge. So if all over the instructions and the argument is he needs to have actual knowledge of his duty to register, it's just not objectively unreasonable for the State's court to say they were instructed, that they had to find actual knowledge. And I think their acquittal of count two is also very telling on what the jury understood. Now, count two was he needed to also tell the prior registering authority that he had moved. So not only did he have to tell where he lived, I'm living here, he had to tell us, the old ones, that he had moved. And they acquitted him of that, which is a strong indication that maybe he didn't understand that second part, that he was also supposed to tell the original people that he had moved, but he was definitely understood that he needed to tell the police in Sunnyvale that this is where he was. And those instructions, if you look at them reasonably, if you look at them to make any sense at all, they said he had to have actual knowledge of his duty to register where he was. He had also been informed multiple times. He was able to go to the DMV and get a driver's license. He had a driver's license. He wasn't he paid rent. He did lots of other things. So he just didn't want to register is what happened, and that was understandable in his situation. Let me ask you a question. I want to make sure I understand what the dispute is. I know you're fighting over the instructions, whether it's a duty to register or a duty to register within 14 days. Is there also a dispute whether duty to register versus knowledge that failure to register is a crime? Do you understand my question? Yes, I do. With willfulness, right? And the instructions required the jury to find that his failure to register was willful, correct? Correct. And is there a dispute in this case that the government had to prove that Mr. Tolton, it's Mr. Tolton, right, that he knew it was a crime for him not to register? No. Under state law, he doesn't need to know that it's unlawful or a crime. He just needs to be aware that he had a duty to register. And he doesn't have to intend to violate the law under state law. And this is all state law, and the state court is the final authority on state law and what the elements are for failure to register. I don't quibble with you that that's your position. Is he taking a different position that they had to prove, the government had to prove, that he knew it was a crime for failure to register? Their position is that it's not, is that the intent to violate the law is the same as having actual knowledge. And I would disagree with that, those two things being equal. So, in other words, if you have actual knowledge and you don't register, then you, therefore, must intend to violate the law. But under California law, you don't have to say, I want to violate the law, so I'm not going to register. You just have to know you need to register and not register. And that's good enough to show that it was a willful violation. Does that make sense? Okay. Unless you have further questions. No. I think we have your argument, ma'am. Thank you. I'd like to address the diagnosis issue very quickly. The doctor, Dr. Durning, did say that, in his opinion, Mr. Tolvin is mentally retarded, and that's at excerpts of Record 211. The issue that came up during the trial was what was the cause of Mr. Tolvin's mental deficits, that is, was it a developmental delay that started before he was 22, in which case one could diagnose mental retardation, or perhaps did he receive a head injury or something of that nature? It was the cause of the deficits, not the existence of the deficits. Well, he did say, I'm not opining that he's mentally retarded. He didn't say, I'm not opining that. He said, I am opining that, and that's at 211. It is my opinion he's mentally retarded. But without the developmental data from his childhood, I can't say that this deficit was in place when he was a child. So it's just not the case. At 209 it says, are you rendering an opinion that he is retarded? Just yes or no before you answer, please. He said, no, I'm not making that diagnosis. At 211, Your Honor, if the Court would look at 211, he does say it is my opinion he's mentally retarded. He said, I can't make the diagnosis, because under the rules for the diagnostic criteria for mental retardation, you have to do research into the person's childhood to determine if they're developmentally delayed, and if not, then one would have to investigate what the real cause of his deficits is. The deficits themselves are undisputed. So you're making a distinction between an opinion and a diagnosis. Well, I guess what I'm saying is that his deficits are undisputed, whether they're caused by a developmental delay, in other words, whether he's retarded because he was born that way or, you know, the onset occurred when he was a child, really isn't significant for our purposes because it's undisputed that he has these deficits. He said, I can't make the diagnosis that he's mentally retarded. My opinion is I believe he's mentally retarded. Right. He thinks it probably started when he was a child. That's all that means. And I guess I just wanted to clarify that. As to the actual knowledge requirement, the government was required to prove that Mr. Tolden actually knew that he had a duty to register within 14 days of moving to a new city. It is that specific subsection of the 290 registration law that he was alleged to have committed a crime violated that justifies this 25-year-to-life under any standard for the state court to not instruct the jury that a mentally retarded man, you know, that he just had to have some sort of general actual knowledge of registration, that is objectively unreasonable. I mean, there are no we can't give habeas relief for violations of state law. It wasn't a violation of state law to failure to instruct on an element of the offense. That's clearly a violation of federal constitutional law. And we've cited to those cases in the brief. Under Nader, this Court would have to find that failure to instruct on that element was harmless beyond a reasonable doubt. There's just not one couldn't make that finding here with a whole issue at trial. That's only true if it's structural error. Under Sullivan, yes. Under Sullivan. But Nader specifically talks about failure to instruct as to an element of the offense. So that's what we're asserting here. And there are multiple standards for such instructional errors. But that's what we're dealing with here is an element of the offense. But harmless error can be applied if there's instructional error regarding an element of a defense. It's not necessarily structural error. Right. I'm citing to Nader at 527 U.S. 19. And this Court must conclude that that error, failure to instruct as an element was harmless beyond a reasonable doubt to find that it was harmless. Here it just could not have been when you have a man who is so severely impaired and where the element was the specific duty to register within 14 days of moving to a new city. The 290, the duty to register under 290 can arise under multiple different kinds of circumstances. And one can glean that from this Court's case law as well as California's. You have a duty when you release from custody to register. You have a duty on your birthday. That's annual registration. You have a duty if you move to a new city, and they're different. As a transient, you have a duty to register every 30 days. If the government is going to charge you with violating that statute, they have to specify which of those laws that you violated, and they have to prove that you actually knew that you were supposed to register under those circumstances. So what the government is arguing here is, oh, well, it was enough to instruct the jury that he knew he had to register. But it wasn't, because these statutes are so complicated, and because he was charged with a specific provision, they were under a duty to find. The jury had to find, and the government had to prove beyond a reasonable doubt that he actually knew that he had to register within 14 days of moving. Roberts. Thank you, counsel. Thank you. I'm sorry. I'm over time.  That's all right. Patients are to be submitted for decision.
judges: Carney, Thomas, Rawlinson